UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:11-CV-602-H

PENSION BENEFIT GUARANTY	PLAINTIFF
CORPORATION

V.

TOWN & COUNTRY BANK AND	DEFENDANT
TRUST COMPANY, ET AL.

**MEMORANDUM OPINION AND ORDER**

This case arises out of a voluntary standard termination of the Town & Country Bank and Trust Company Retirement Plan (the "Plan"), a defined benefit pension plan sponsored by Defendant, Town & Country Bank and Trust Company (the "Company"). The Plan is a single-employer benefit pension plan within the meaning of §3(41) of the Employment Retirement Income Security Act of 1974 ("ERISA"). Plaintiff, Pension Benefit Guaranty Corporation ("PBGC"), is a United States government corporation responsible for administering and enforcing the defined benefit pension program under Title IV of ERISA.

PBGC filed this action to enforce its own Final Determination that the Company's standard termination of the Plan was not completed in accordance with the Plan's provisions in effect on the Plan's date of termination, nor with applicable law. For the reasons that follow, the Court concludes PBGC's Final Determination correctly interpreted the law and was neither arbitrary nor capricious. Accordingly, summary judgment for PBGC is appropriate.

I.

Congress enacted ERISA to establish minimum standards for employee pensions plans. ERISA created the PBGC, a corporate body within the Department of Labor, to administer and enforce the nation's benefit pension plan termination program. 29 U.S.C. §§ 1301-1461. The PBGC has promulgated regulations governing its activities and for those administering ERISA pension funds. 29 C.F.R. § 4000, *et seq*. Specifically, PBGC oversees the termination procedures for all ERISA plans. A pension plan may terminate in a voluntary standard termination if it has sufficient assets to pay all promised benefits. 29 U.S.C. § 1341(b). The amount of benefits are determined under the plan provisions in effect on the plan's termination date. 29 C.F.R. § 4041.8. The plan administrator must set a specific date as the proposed termination date. *Id.* at § 4041.23(a).

In our case, effective January 1, 1997, the Company established a single-employer defined-benefit pension plan to provide pension benefits to certain of its employees. The Company was the administrator and contributing sponsor of the Plan. On June 4, 2009, the Company issued a Notice of Intent to Terminate in accordance with 29 U.S.C. § 1341(a)(2), certifying a notice of intent to terminate the Plan in a standard termination. On the required form, the Company listed the termination date as August 15, 2009.[1]

On March 22, 2010 and August 19, 2010, PBGC received a post-distribution certificate from the Company, called a PBGC Form 501, stating that the Company completed its standard termination

---

[1] The Company initially began the process of terminating the Plan in 2006. In doing so, the Company applied to the IRS for a Determination Letter to the effect that the termination of the Plan would not adversely affect its qualification for favorable federal tax treatment. The Company did not receive the Determination Letter until nearly two years later. In the interim, interest rates changed dramatically, resulting in an increase in the amount of distributions payable to participants. To take advantage of The Pension Protection Act of 2006 ("PPA"), the Company withdrew its 2006 plan termination and began a new termination with a new proposed termination date.

2

of the Plan and made distributions in accordance with ERISA.  The Company calculated the lump sum value of the participant's benefit according to an amendment adopted by the Company on August 17, 2009 ("2009 Amendment"), two days after the Plan's termination date.[2]

In July 2010, PBGC notified the Company that it had selected the Plan for audit.[3]  After the PBGC issued its Initial Determination, the Company filed objections in accordance with 29 C.F.R. § 4003.34.[4]  On September 15, 2011, PBGC issued a Final Determination affirming its Initial Determination that the Plan was not terminated in compliance with Title IV of ERISA.  The audit concluded that the Company improperly used the 2009 Amendment in calculating benefits, effectively reducing the distribution amount participants should have received.[5]  The Final Determination required that benefits paid in the form of lump sums be revalued as of the date of distribution using the interest rate and actuarial assumptions in effect on the date of Plan termination,

---

[2]As of August 15, 2009, the Plan required the calculation of actuarial values using the annual interest rate based on 30-year Treasury securities for the second month before the Plan year in which the annuity start date occurs and the 94 GAR Morality Table. On August 17, 2009, the Company amended the Plan to provide that lump sums would be equal to the greater of (1) the present value determined under PPA segment rates and the 2009 PPA Mortality Table as of the date of distribution, or (2) the present value determined under the 30-year Treasury rates and 94 GAR Mortality Table as of October 1, 2007.

[3]To regulate pension plan terminations, PBGC is required to audit a statistically significant sample of plan terminations each year to ensure that the plan administrator properly calculated and distributed benefits in accordance with plan provisions and in compliance with applicable laws and regulations. 29 U.S.C. § 1303(a).

[4]The Company did not raise the objections now primarily at issue concerning the weekend or holiday rule. 29 C.F.R. § 4000.43.  However, the failure to raise that issue does not act as a waiver of it here.

[5]The total amount actually distributed by the Company pursuant to the 2009 Amendment was $4,135,626. If the Company used interest rate and actuarial assumptions in effect prior to the 2009 Amendment, the Plan's total benefit liability would have been approximately $4,886,900, an increase in the amount actually distributed of about $731,300.

3

and that any necessary additional distributions, plus interest, be made to participants. To date, the Company has not taken the requested action.[6]

On October 27, 2011, PBCG filed this suit under 29 U.S.C. § 1303(e)(1) asking this Court to enter judgment in favor of PBGC enforcing its Final Determination. PBGC also seeks to recover from the Company all costs and expenses, including attorney's fees, incurred in connection with this action. PBGC has filed an administrative record consisting of two volumes for the Court's consideration. The parties have filed cross-motions for summary judgment.

## II.

The Administrative Procedure Act directs courts to review agency actions under a deferential standard. A court may not set aside or hold unlawful an agency action unless that action is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A); *Elliott v. Metropolitan Life Inc. Co.*, 473 F.3d 613 (6th Cir. 2006). Where, as here, the Court reviews an agency's interpretation of its own regulation, the Court should defer to the agency's interpretation unless the interpretation is plainly erroneous or inconsistent with published regulations. *Auer v. Robbins*, 519 U.S. 452, 461 (1997); *Bidwell v. University Medical Center, Inc*., 685 F.3d 613 (6th Cir. 2012). Deference to an agency's reasonable interpretation of a statute is required albeit more than one reasonable interpretation exists and the particular interpretation does not appear to be the most sensible. *Alaska Dep't of Env't Conservation v. EPA*, 540 U.S. 461, 497 (2004); *Thorton v. Graphic Communications Conference*, 566 F.3d 597, 609 (6th Cir. 2009). In sum, if PBGC's

---

[6]Additionally, the audit found that the benefit of a missing participant was improperly rolled into an IRA in violation of 29 U.S.C. § 4050. The Company has since paid the benefit to PBGC's Missing Participant Program, but for an amount calculated using the 2009 Amendment.

4

interpretation of its own regulation is reasonable, the Court must defer to it.

**III.**

The Company now argues PBGC's determination was arbitrary and not in accordance with the law because it ignored applicable regulations. Specifically, the Company argues the 2009 Amendment adopted on Monday, August 17 (two days after the stated termination date) was timely by virtue of the weekend or holiday rule found in PBCG's computation of time rules.

No one disputes that Section 4041.8 of the regulations requires that in a standard termination, plan participants receive the value of their benefits using the plan provisions in effect on its termination date. Amendments adopted after the Plan's termination date may not be taken into account to the extent they decrease benefit values. 29 C.F.R. § 4041.8(a). The Company does not dispute the 2009 Amendment was adopted two days after the Plan termination. Nor does the Company dispute that application of the 2009 Amendment would decrease the Plan's lump sum value. Where the parties diverge in interpreting the regulations is whether the Plan's termination date, which fell on a Saturday, is subject to the weekend or holiday rule.

The weekend or holiday rule provides that time periods ending on a weekend or Federal holiday are extended to the next regular business day. *Id*. at § 4000.43. Though the Company designated Saturday, August 15, as the Plan's termination date, it argues that the weekend rule extends the termination date to the first business day following the weekend, August 17, 2009. Under this interpretation, the 2009 Amendment would then be timely, permitting a lump sum benefit calculation in accordance with its revisions.

The weekend or holiday rule does apply to the computation of time periods set forth in the regulations. *Id.* at § 4000.41. For a number of reasons, however, the weekend or holiday rule does not affect a plan's termination date set by the plan administrator. The PBGC's own instructions and forms require the plan administrator to designate a specific termination date. *See* PBGC Form 500. Those instructions and the regulations state that "a proposed termination date may be any day, including a weekend or Federal holiday." 29 C.F.R. § 4041.3(a). Where the plan administrator has set a date for termination, no regulation is necessary to "compute any time period" to determine the provisions governing benefit disbursement. *Id.* Therefore, the termination date, and the acts deemed to occur on a termination date, does not slide to a week date because the employer designates it on a weekend.

The PBGC regulations do contemplate the need to count backward and forward when computing time periods.[7] *See id.* at § 4000.43(a), (b) and (d). In those circumstances, the computation-of-time rules contemplate some degree of arithmetic in determining requisite deadlines for timely filings. Those rules are not applicable here. No one disputes that the proposed termination date that the Company set here provided the proper and timely statutory notice. However, the termination date itself it not a time period, and as such, is not subject to the weekend or holiday rule.

Admittedly, the regulations are intricate and subject to some legitimate dispute. However, this Court's role is to determine the reasonableness of the PBGC's interpretation. Because the PBGC's interpretation is neither plainly erroneous nor inconsistent with the language of the

---

[7]The PBGC Standard Termination Filing Instructions read: "Assume a proposed termination date of May 8, 2011 (a Sunday). For the [notice] to be timely, it must be issued no later than March 9, 2011, and no earlier than February 7, 2011. In counting backwards, start with May 7, 2011 (a Saturday), as day 1." This example demonstrates that the termination date is the point from which the computation of time regulations measure days to determine timely notices.

regulation itself, the Court has no difficulty concluding that it is reasonable and probably represents the better view.

## IV.

Defendant additionally argues PBGC's Final Determination was unreasonable based on the facts and circumstances of this case. The Company initially began its plan termination in 2006. As part of its termination process, the Company sought an IRS Determination Letter to ensure that the termination of the Plan would not adversely affect its qualification for favorable tax treatment. The Company did not receive the IRS Determination Letter for nearly two years. During this delay, the financial markets deteriorated significantly, resulting in lower interests rates and a marked increase in the amount of the lump sum payable to beneficiaries. The Company moved to amend its Plan to take advantage of PPA's interest rate changes, but did not sign the 2009 Amendment until after the Plan's termination date. The Company argues they should be permitted to apply a post-termination amendment because calculating Plan benefits using the pre-2009 Amendment rate would result in distributions that exceed what the Company anticipated paying and what the participants believed they would receive.

The Court finds PBGC's Final Determination to be in accordance with ERISA's provisions and regulations and therefore is reasonable. Once initiated, a voluntary termination proceeding remains voluntary. The Plan sponsor may restart the standard termination process to amend the Plan before its termination date providing that lump sums will be calculated alternatively. The regulations clearly provide that benefit liabilities are determined as of the date of plan termination. Additionally, the regulations clearly prohibit application of any benefit-reducing amendment adopted after the termination date. Thus, the Company should expect to pay, and participants expect to receive,

benefits calculated in accordance with the Plan's provisions as of the date of plan termination. PBGC's determination was reasonable and in accordance with applicable provisions and regulations.

For all these reasons, the Court grants PBGC's motion for summary judgment as its Final Determination is fully supported by the administrative record and is not arbitrary, capricious and contrary to law.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiff, Pension Benefit Guaranty Corporation's Motion for Summary Judgment is SUSTAINED.

IT IS FURTHER ORDERED that Defendant, Town & Country Bank and Trust Company's Motion for Summary Judgment is DENIED.

IT IS FURTHER ORDERED that Defendants, Town & Country Bank and Trust Company and the Retirement Committee, must comply with PBGC's Final Determination as well as the provisions of Title IV of the Employment Retirement Income Security Act of 1974, and applicable regulation; and

IT IS FURTHER ORDERED that PBGC is awarded all costs and expenses of litigation incurred in connection with this action.

This is a final order.

cc:     Counsel of Record